UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-60328-Cr-Rosenberg/Brannon

UNITED STATES OF AMERICA,

v.

DARIEN YOUNG, et al.

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on Defendant Darien Young's ("Defendant") Motion to Suppress Evidence Based on Illegal Stop, Search and Seizure [DE 48], and the government's response thereto [DE 54]. The Court held an evidentiary hearing on October 26, 2016 [DE 58] where the government called three witnesses: Special Agent Jesse Ricks of the Drug Enforcement Administration ("DEA"), Officer Christopher Chambers of the Fort Lauderdale Police Department ("FLPD"), and Detective Tim Shields of the FLPD. Defendant also introduced eight exhibits into evidence: a DEA report (Ex. 1), four Florida Uniform Traffic Citations (Exs. 2-5),[1] the deposition transcript of Christopher Chambers (Ex. 6), a motion for issuance of subpoenas duces tecum (Ex. 8), and an audio compact disc containing a recording of a police dispatch (Ex. 9). The Court, after finding the following credible facts from the testimony and exhibits introduced at the hearing, hereby RECOMMENDS that Defendant's motion be GRANTED IN PART and DENIED IN PART.

---

[1] While five traffic citations were discussed at the hearing, only four were introduced into evidence. As established at the hearing, the citation that was not introduced into evidence was written after the relevant events took place, making it irrelevant to the Court's analysis below.

1

## I. FACTUAL BACKGROUND

Defendant's motion to suppress arises from a traffic stop. On September 24, 2012, Officers Chambers and Tobias of the FLPD were on patrol in a marked vehicle in Broward County. While on patrol, Officer Chambers received a call on his cell phone from Sergeant Coffin of the FLPD Narcotics Unit instructing him to pull over a green Ford Taurus suspected of containing drugs. Sergeant Coffin did not provide Officer Chambers with additional details. Following Sergeant Coffin's directions on where to find the car, Officer Chambers located the green Ford Taurus on the corner of East Commercial Boulevard and North Federal Highway. While stopped at a red light to the back and left of the Ford Taurus, Officer Chambers noticed that the car's right rear tire was bald and that the driver, who was later identified to be Defendant, was not wearing a seat belt.

At 5:55 p.m. Officer Chambers turned on his sirens and pulled the Ford Taurus over. Once stopped, Officer Chambers obtained Defendant's driver's license and registration, which listed two different addresses. Officer Chambers questioned Defendant about the address discrepancy and Defendant's criminal history, while Officer Tobias ran a background check on the license. During this exchange, Officer Chambers asked Defendant if he had anything illegal in the car, to which Defendant answered "no." Officer Chambers then asked if he could search the car, and Defendant refused. At that point, Officer Chambers dispatched for a K-9 unit.

At 6:10 p.m. after requesting the K-9 unit, Officer Chambers returned to his police car and began writing three traffic citations for (1) the bald tire; (2) the seatbelt violation; and (3)

the failure to change the address on the driver's license.[2] While Officer Chambers was still writing the citations, FLPD K-9 Officer Shields arrived on scene with a police dog. The dog sniffed around the vehicle, eventually sniffing near the trunk before alerting to the presence of drugs in the trunk. Officer Shields then searched the trunk, which resulted in the seizure of a black leather bag containing a kilogram of a powdery substance later determined to be cocaine.

At 6:40 p.m. Defendant was handcuffed and placed in Officer Chambers' police car. Officer Chambers asked Defendant if he wanted to speak with a narcotics officer to turn over the source of the drugs to which Defendant responded "No, I can't say anything, it's mine." Officer Chambers then said "now I know why you didn't want me to search the car" to which Defendant replied "I'm not going to tell you I have a brick in the car." Officer Chambers did not read Defendant his *Miranda* rights prior to this discussion.

## II.   ANALYSIS

Defendant has moved to suppress the use of the drugs seized as evidence and the statements made to Officer Chambers. The Court recommends that the motion be denied as to the drugs, but granted as to the statements.

### A.   Defendant's Motion to Suppress the Drugs

Defendant argues that the drugs recovered should be suppressed because the officers violated Defendant's Fourth Amendment right against unreasonable searches and seizures. Specifically, Defendant argues that (1) the traffic stop was improper; (2) the duration of the

---

[2] As established at the hearing, Officer Chambers wrote two additional tickets at the police station, which have no bearing on the Court's analysis because they were written after the traffic stop.

stop was unreasonable; and (3) the officers did not have probable cause to search Defendant's trunk despite the dog sniff and alert. The Court recommends rejecting each argument.

### a. The Traffic Stop

As an initial matter, the Court finds that the traffic stop complied with the Fourth Amendment. It is well-settled that a traffic stop is proper "where the police have probable cause to believe that a traffic violation has occurred." *Whren v. U.S.*, 517 U.S. 806, 810 (1996); *U.S. v. Holloman*, 113 F.3d 192, 195 (11th Cir. 1997). The officer's subjective intent plays no role in determining whether the stop was appropriate. *Whren*, 517 U.S. at 814. That is, if there is probable cause to believe that a traffic violation has occurred, then the stop is proper even if the officer's true motivation for the stop is something other than the traffic violation. *Id.*

Here, Officer Chambers observed that Defendant's car had a bald tire and that Defendant was not wearing a seatbelt in violation of Florida traffic laws. That makes the stop proper, and it is irrelevant whether Officer Chambers' true motivation was to stop the car based on Sergeant Coffin's phone call about drugs being in the car. *See Holloman*, 113 F.3d at 194 (holding that because officers had probable cause to believe that a traffic violation occurred, the stop complied with the Fourth Amendment "notwithstanding their subjective desire to intercept any narcotics being transported").

While the stop was proper based on the traffic violations, the Court rejects the government's "collective knowledge" argument advanced as an independent basis for the stop. The government argues that the DEA investigation prompting Sergeant Coffin's call to Officer Chambers gave rise to probable cause to believe that drugs were in the car. But it is undisputed that the officers involved in the stop, Chambers and Tobias, had no knowledge of

4

the DEA investigation or any other facts purportedly giving rise to probable cause to believe that drugs were in the car.  The government's "collective knowledge" argument sweeps entirely too broadly by seeking to impute the knowledge of officers having nothing to do with the traffic stop to those on scene.  Because the officers *involved in the stop* had no knowledge of the DEA investigation, no probable cause existed to believe that drugs were in the vehicle. *See U.S. v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (a stop may be based on the "collective knowledge of the officers *involved in the stop*.") (emphasis added) (quotations omitted).

Nonetheless, while the Court rejects the government's "collective knowledge" argument, the stop was still proper because Officer Chambers observed the aforementioned traffic violations.  It matters not that Officer Chambers' true motivation for the stop was to ultimately uncover drugs.

### b.   The Duration of the Stop

Next, the Court finds that the duration of the stop was proper.  A police stop complies with the Fourth Amendment when it does not "exceed[] the time needed to handle the matter for which the stop was made[.]" *Rodriguez v. U.S.*, 135 S. Ct. 1609, 1612 (2015).  To that end, when the justification for a stop is a traffic violation, the stop is constitutional if it lasts for the amount of time "reasonably required to complete the mission of issuing a ticket for the violation." *Id.* (quotations omitted).  That said, the traffic stop may last long enough for the police to ask questions about the infraction "and to conduct a variety of checks about licenses, registration, insurance and so on." *U.S. v. Hernandez*, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005). Clearly, "the police are not constitutionally required to move at top speed or as fast as possible." *Id.* (citations omitted).  Rather, the police may "pause for a moment to take a

5

breath, to think about what they have seen and heard, and to ask a question or so." *Id.* In short, "the police are authorized to detain traffic violators for a ***reasonable*** amount of time" in light of the justification for the stop, but they are under no rigid obligation to move at lightning speed. *Id.* (emphasis in original).

Here, Officer Chambers pulled Defendant over for having a bald tire and not wearing a seatbelt. Upon receiving Defendant's license and registration, Officer Chambers noticed a discrepancy on the addresses listed on the documents and justifiably began to question Defendant on the discrepancy. Officer Chambers also asked questions about Defendant's criminal background, ran a driver's license check, and asked for consent to search the car before calling the K-9 unit to the scene. All of this took approximately 15 minutes, which is clearly a reasonable amount of time for Officer Chambers to inquire on these issues. Indeed, the K-9 unit arrived while Officer Chambers was still in the process of writing the three traffic citations for which Defendant was pulled over. Under these facts, Defendant was detained for the amount of time reasonably required to complete the mission of issuing the tickets for the traffic violations, and the duration of the stop was therefore reasonable.

To that end, Defendant's reliance on *Rodriguez* is misplaced. In that case, the police continued to detain the defendant despite having fully completed the traffic stop, including returning all documents and writing all citations. *Rodriguez*, 135 S. Ct. at 1612. Under those circumstances, the justification for the stop was complete and the police, having no independent basis for the detention, should not have detained the defendant further. Here, by contrast, Officer Chambers was still in the process of writing traffic citations when the K-9 unit arrived. Having found that Officer Chambers did not inappropriately extend the duration

6

of the stop, and the fact that the justification for the stop was still ongoing, *Rodriguez* is distinguishable. Thus, the duration of the stop was proper.

### c.     Probable Cause

Finally, the Court finds that the officers had probable cause to search Defendant's trunk based on the dog sniff and alert. It is well-settled that "a probable-cause hearing focusing on a dog's alert should proceed much like any other." *Florida v. Harris*, 133 S. Ct. 1050, 1058, (2013). The parties make their best case consistent with the rules of criminal procedure, and the court evaluates the proffered evidence to decide what the circumstances demonstrate. *Id.* Thus, as with every probable cause inquiry, the question is whether "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id*. at 1052-53.

In making the probable cause inquiry, "evidence of a dog's satisfactory performance in a certification or training program can itself provide a sufficient reason to trust his alert." *Harris*, 133 S. Ct. at 1057. Indeed, a court may presume that the dog's alert provides probable cause for a search when a bona fide organization has certified the dog after testing the dog's reliability in a controlled setting. *Id.* And, while the court may consider records of a dog's field performance, the absence of such records does not necessitate an adverse probable cause determination. *Id.* at 1056. To the contrary, such records "have relatively limited import" because "[t]he better measure of a dog's reliability [] comes away from the field, in controlled testing environments[.]" *Id.* at 1056-57.

Here, Defendant argues that the police lacked probable cause for the search because "[t]he government has absolutely no evidence or documentation as to training, field records,

activity logs, or otherwise, to establish that [the dog] was sufficiently qualified in detecting narcotics." [DE 48 at 7]. The Court disagrees. At the hearing on Defendant's motion, K-9 Officer Shields testified that he worked with the dog for approximately three years at the time of Defendant's arrest. Officer Shields testified that the dog completed three months of narcotic detection training, including training on cocaine detection—the very drug recovered from Defendant's car. Officer Shields went into detail on the specific exercises that the dog performed, explaining that the dog received "excellent" marks. The dog was certified in narcotics detection from the Florida Law Enforcement Canine Association, an independent non-profit organization specializing in training and certification of law enforcement K-9s. The Court is satisfied that the dog was sufficiently qualified to detect the drugs in Defendant's car.

Nonetheless, Defendant argues that the government *must* provide documentation as to the dog's qualifications because, absent such records, he would not be able to properly scrutinize the dog's qualifications. But Defendant had the opportunity to, and did, thoroughly cross-examine Officer Shields on the dog's qualifications. It is of no moment that the government did not produce documentation as to the dog's qualifications because the testifying officer was available for cross-examination. *See Harris*, 133 S. Ct. at 1057 (holding that the dog's records are not required so long as the defendant has "an opportunity to challenge [] evidence of a dog's reliability, whether by *cross-examining the testifying officer* or by introducing his own fact or expert witnesses.") (emphasis added). As stated, there is no *per se* rule requiring the production of records in order to establish a drug detection dog's qualifications, and the Court will not hold otherwise in this case. *Id.*

8

In short, the evidence produced at the hearing, when "viewed through the lens of common sense," reasonably supports a finding of probable cause to believe that drugs were in Defendant's car. Defendant's arguments to the contrary lack merit, and it is therefore RECOMMENDED that Defendant's motion to suppress the drugs be DENIED.

### B.  Defendant's Motion to Suppress the Statements

The Court will now address Defendant's argument that the two statements made in Officer Chambers' police car should be suppressed under *Miranda* and its progeny. In *Miranda v. Arizona,* 384 U.S. 436 (1966), the Supreme Court established procedural safeguards to protect the rights of an accused, under the Fifth and Fourteenth Amendments, to be free from compelled self-incrimination during custodial interrogation. Because the warnings are designed to protect against the evils of "custodial interrogation," it must be established that the defendant was both "in custody" and under "interrogation" by police officers at the time of the incriminating statements. *U.S. v. Castro*, 723 F.2d 1527, 1530 (11th Cir. 1984).

The parties do not dispute that Defendant was in "custody" at the time of the statements, but they do dispute whether the statements were made as a result of "interrogation." Under *Miranda*, "interrogation" does not require express questioning. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Interrogation" refers to any words or actions "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* While statements made in response to "interrogation" are due to be suppressed absent *Miranda* warnings, the same cannot be said about "voluntary and spontaneous comments by an accused" that are not the product of interrogation. *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991).

9

Here, the government argues that Defendant's two statements were not the result of interrogation, but instead were "simply blurted out," "spontaneous and voluntary," and "neither sought nor elicited by the police." [DE 54 at 11]. The Court disagrees. Regarding the first statement, once the drugs were recovered from Defendant's trunk, Officer Chambers asked Defendant if he wanted to speak with a narcotics officer to turn over the source of the drugs. It is reasonably likely that Officer Chambers' question regarding the source of the very drugs recovered from Defendant's trunk would elicit an incriminating statement as it in fact did when Defendant responded: "No, I can't say anything, it's mine."

The Court also finds that Defendant's second statement was the result of interrogation and should be suppressed. After Defendant admitted that the drugs belonged to him, Officer Chambers said "now I know why you didn't want me to search the car," to which Defendant responded: "I'm not going to tell you I have a brick in the car." It is reasonably likely that Officer Chambers' statement regarding the reason for Defendant's refusal to consent to a search would result in an incriminating response. This is especially true because Defendant had just admitted to being the owner of the drugs in response to Officer Chambers' first inquiry. Although Officer Chambers' statement was not in the form of a question, it still qualifies as interrogation. Therefore, the Court RECOMMENDS that Defendant's motion to suppress both statements be GRANTED.

### III.   CONCLUSION

Accordingly, it is RECOMMENDED that Defendant's Motion to Suppress [DE 48] be GRANTED IN PART and DENIED IN PART such that the drugs recovered as evidence are not suppressed, but both statements are.

### IV.     NOTICE OF RIGHT TO OBJECT AND SHORTENED OBJECTION PERIOD

Given the swiftly-approaching trial period, the Court is shortening the time in which the parties have to file objections and responses.  A party shall serve and file written objections, if any, to this Report and Recommendation with U.S. District Judge Robin L. Rosenberg, by *Tuesday, November 15, 2016*.  Any responses to objections shall be filed by *Friday, November 18, 2016*.  Failure to file timely objections may limit the scope of appellate review of factual findings contained herein.  *U.S. v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE AND ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 8th day of November, 2016.

*[signature: Dave Lee Brannon]*

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE